746 S.E.2d 35

**WACHOVIA BANK, N.A., Petitioner,**

v.

**Ann T. COFFEY and Bank of America, N.A., Respondents.**

**Appellate Case No. 2010–174086.**

**No. 27282.**

Supreme Court of South Carolina.

Heard Oct. 31, 2012.

Decided July 10, 2013.

Sarah Patrick Spruill, of Haynsworth Sinkler Boyd, PA of Greenville, Hamilton Osborne, Jr. and James Y. Becker of Haynsworth Sinkler Boyd, PA of Columbia, all for Petitioner.

Gregory Milam Alford and Curtis Lee Coltrane, both of Alford Wilkins and Coltrane, LLC of Hilton Head Island, for Respondents.

Chief Justice TOAL.

We granted certiorari in this case to review a court of appeals' decision finding that Wachovia Bank, N.A. (Petitioner) committed the unauthorized practice of law in closing a home equity loan in 2001, and that Petitioner's unclean hands barred it from any equitable relief. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

In 2001, Michael Coffey (Husband) obtained a home-equity line of credit from Petitioner. Husband signed a mortgage prepared by Petitioner's employees that purported to encumber Husband's Hilton Head Island home (the property). The mortgage contained the express language that Husband lawfully owned the property, and held the right to mortgage the property. However, Husband did not possess any interest in the property. In fact, Ann Coffey (Wife) held sole title to the property. Wife did not participate in the loan transaction and had no knowledge of Husband's transaction with Petitioner. Petitioner did not perform a title search to determine ownership of the property at time of the transaction. Additionally, Petitioner prepared the loan documents and closed the loan transaction without the participation or supervision an attorney licensed to practice law in South Carolina.

Husband subsequently purchased a sailboat, and financed the purchase through a $125,000 draw on the line of credit. Husband placed title to the sailboat in the name of A & M Partners, a corporation Husband and Wife jointly owned, and of which they served as President and Vice–President, respectively. Husband made regular payments on the line of credit from July 2001 until his death on March 21, 2005. Husband made these payments using funds from a personal checking account he shared with Wife. Following Husband's death, Wife continued making monthly payments using the same checking account. In September 2005, Wife discovered documents showing a loan or mortgage on the sailboat. Wife wrote "boat loan," or "boat" on the memo line of at least three checks she sent to Wachovia in September and November 2005.

That same year, Wife also began efforts to sell the boat with the assistance of her daughter, Maureen Coffey–Edri (Daughter). In December 2005, Daughter provided St. Barts Yachts (St. Barts), a yacht broker, with loan information for the sailboat showing a payoff amount due to Petitioner in the amount of $125,643.30. An employee of St. Barts prepared a draft "Seller's Disbursement Summary," showing a sale price of $112,000, with a $125,600 "payoff" to Petitioner. This payoff amount required a balance due from Wife of $25,525. However, when Wife asked a St. Barts employee to check on the status of the loan, the employee informed her that there was no lien or mortgage on the sailboat. Wife believed the sailboat was "paid for," and never inquired with Petitioner about the line of credit or any other possible encumbrances on the sailboat. Wife sold the sailboat in January 2006 for $112,000 and received $100,075 from the sale. Wife deposited the proceeds in her personal bank account and did not make any further payments to Petitioner.

In June 2006, Petitioner filed a foreclosure action in the circuit court against Husband's estate, Wife, both individually and as personal representative of Husband's estate, and three of the couple's five children. In September 2006, Wife filed an inventory and appraisal of Husband's estate with the Beaufort County Probate Court. This inventory and appraisal acknowledged Husband and Wife's joint ownership of the boat. Petitioner then filed an amended complaint in 2008 naming Wife and Bank of America, N.A. as the only defendants. Petitioner

sought to foreclose on the mortgage signed by Husband and included causes of action for equitable lien, prejudgment interest, restitution, ratification, quantum meruit, and quasi-contract. Petitioner filed a motion for summary judgment, and Wife filed a cross-motion for summary judgment on all of Petitioner's claims.

The master-in-equity denied Petitioner's motion for summary judgment on its claims against Wife, and granted Wife summary judgment on all of the claims asserted by Petitioner. The master-in-equity held, *inter alia:*

> I am troubled by the concept that [Wife] sold the sailboat and retained the proceeds and that there is some perception of unfairness to Petitioner. However, in this court's opinion, Petitioner is the architect of its own problem. Petitioner prepared the loan documents and closed the loan with Husband without an attorney. Had Petitioner retained an attorney to prepare the loan documents and *performed a title search, which should have been done, it would have known Husband did not own the subject [p]roperty to be mortgaged.* This case would not have been filed and Petitioner's mistake would have been caught. It now attempts to seek equitable relief for its own mistake. Its own mistake arose by its own acts.

(emphasis added).

Petitioner appealed, and the court of appeals affirmed. *Wachovia Bank, N.A. v. Coffey,* 389 S.C. 68, 698 S.E.2d 244 (Ct.App.2010). The court of appeals held that Petitioner's actions constituted the unauthorized practice of law, and therefore, barred its equitable and legal claims. *Id.* at 76–77, 698 S.E.2d at 248 ("We therefore reach the inescapable conclusion that [Petitioner] has come to court with unclean hands and is barred from seeking equitable relief. . . . [Petitioner's] legal causes of action are barred as well.") (citations omitted).

This Court granted Petitioner's request for certiorari pursuant to Rule 242, SCACR.

## ISSUES PRESENTED

I.  Whether the court of appeals erred in holding that Wachovia was on notice that its conduct constituted the

unauthorized practice of law and that Wachovia had unclean hands.

II.   Whether the court of appeals erred in stating that Petitioner's legal remedies were barred.

III.  Whether the holding of the court of appeals conflicts with that court's prior holding that a trial court does not have jurisdiction to determine the unauthorized practice of law.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56, SCRCP." *Quail Hill, LLC v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citation omitted). Rule 56, SCRCP provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC*, 387 S.C. at 235, 692 S.E.2d at 505. (citation omitted).

## LAW/ANALYSIS

Petitioner's arguments, and to a significant degree the lower court decisions in this case, center on whether Petitioner's alleged unauthorized practice of law bars equitable and legal relief. However, this is not the dispositive question in this case. Instead, the pertinent inquiry is whether Petitioner may foreclose on an invalid mortgage.

As explained, *supra*, Husband obtained a $125,000 home equity line of credit from Petitioner, and secured the loan with the couple's residence, which was titled in Wife's name only. Petitioner failed to verify Husband's interest in the couple's residence. Therefore, Petitioner never possessed a valid mortgage on the property and cannot pursue an action

against Wife related to that mortgage. *See, e.g., Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997) ("A mortgage foreclosure is an action in equity.").[1]

1. We respectfully disagree with the dissent's view that Petitioner may rely on equitable principles to foreclose on an invalid mortgage. One of equity's most important aspects is the principle of "right and fair dealing," between *parties* to particular transaction. *See, e.g., Kelly v. McCray*, 278 S.C. 88, 90, 292 S.E.2d 587, 589 (1982) (agreeing with the lower court that equity prevented the respondent from rendering *her own* agreement unenforceable). However, equitable maxims do not operate to place burdens on individuals made party to a particular transaction through no fault or expressed interest of their own, or, as in this case, through the fault and mistake of others. *Cf.* Henry L. McClintock, McClintock on Equity, at 52 (2d.1948) (listing the equitable maxims, "(1) equity regards as done what ought to be done; (2) equity looks to intent, rather than to form; ... [(3)] equity imputes an intention to fulfill an obligation; [(4)] equity will not suffer a wrong without a remedy; and [(5)] equity follows the law." (citation omitted) (alterations added)); *see also Regions Bank v. Wingard Props. Inc.*, 394 S.C. 241, 249, 715 S.E.2d 348, 352 (Ct.App.2011) ("Maxims developed, at least in part, to reflect the attempt by the courts of equity to create guiding principles, in the same way that the legal courts developed binding precedent.").

We do not agree with the view that what "ought to be done" is to place responsibility for Petitioner's mistake on to Wife. The dissent offers an incorrect summation of today's decision, stating that we find Petitioner is not entitled to equitable relief because of a mere "mistake." To the contrary, equity should not be used to validate Husband's decision to mortgage a property for which he held no interest, and Petitioner's choice to simply take Husband at his word, and then attempt to charge Wife with responsibility for that blunder. This finding comports with well-settled equitable principles and poses no new "bar" or "universal rule" as the dissent asserts.

The dissent focuses too narrowly on the notion that Petitioner committed an "error," to the exclusion of Petitioner's and Husband's *actual* conduct in this case.

We stress that sophisticated financial institutions that prepare mortgages purporting to encumber a customer's property must ensure that the customer in fact holds a legal interest in that property so as to protect all pertinent interests. Concomitantly, South Carolina courts should not stretch equitable principles to unfairly place fault on parties who did not contribute to the underlying transaction. *See, e.g.,* McClintock on Equity, at 320 ("Where *the parties* have manifested an intention that the real property *of one of them* shall be especially set aside as security for the payment of an obligation due to the other, equity will give effect to the intention by treating the property as though it had been validly mortgaged." (emphasis added)). We earnestly appreciate the dissent's concerns. However, we would be more concerned with an equitable doctrine so broad as to allow lenders to ameliorate their

Thus, the master-in-equity properly granted summary judgment in favor of Wife. We need not discuss the remaining issues presented by the parties. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

For the foregoing reasons, the court of appeals decision is **AFFIRMED AS MODIFIED.**

BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., dissenting in a separate opinion in which HEARN, J., concurs.

Justice PLEICONES:

I respectfully dissent and would remand the matter to the Court of Appeals. Petitioner (Wachovia) sought to recover the proceeds from respondent Coffey's sale of the boat under several equitable theories: mortgage foreclosure, unjust enrichment, equitable mortgage, restitution, ratification, quantum merit, or quasi-contract. While the majority may well be correct that Wachovia's foreclosure action fails because the purported mortgage was invalid, it is the unavailability of recovery under that cause of action that is the predicate for Wachovia's other theories. In footnote 1, the majority makes explicit its philosophy that equity acts to punish those who make a mistake. *See also Matrix Fin. Servs. Corp. v. Frazer*, 394 S.C. 134, 714 S.E.2d 532 (2011). In my view, equity exists to correct mistakes and prevent windfalls. *E.g., McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998) (unjust enrichment/constructive trust used to recover money from innocent third party where third party would be unjustly enriched by a windfall actually owed to plaintiff). The majority offers no explanation why the lender should be denied the opportunity to recover the money it lent other than that it made an error.

complete failure to exercise proper due diligence at the expense of third parties.

We granted certiorari to review a Court of Appeals' decision that affirmed the trial court's grant of summary judgment to respondent. The Court of Appeals held that because Wachovia committed the unauthorized practice of law (UPL) in closing a home equity loan in 2001, its unclean hands barred it from any equitable relief. Further, the Court of Appeals held Wachovia's UPL barred it from any legal remedies. I would reverse the equitable ruling under *BAC Home Loan Servicing LP v. Kinder*, 398 S.C. 619, 731 S.E.2d 547 (2012), which clarified that UPL bars equitable remedies[2] only when the transaction occurred after August 8, 2011. Further, I would vacate the dicta stating that UPL also bars Wachovia from any legal relief, as no legal relief was sought by Wachovia in this case. Since the trial court's order granting respondent summary judgment on Wachovia's theories of unjust enrichment/restitution/quasi-contract, mortgage ratification and foreclosure, equitable lien, and prejudgment interest rest on several grounds other than UPL, I would remand the case to the Court of Appeals to consider the issues raised by Wachovia on appeal but left unaddressed by its original decision.

The majority holds Wachovia is not entitled to equitable relief because it made a mistake. I cannot tell whether this new bar is applicable only to commercial lenders, or if it is a universal rule. Further, the majority leaves standing the dicta in the Court of Appeals' opinion to the effect that UPL bars a lender from legal as well as equitable remedies. While I am concerned about the impact of the majority's decision on lenders especially, I am even more apprehensive about its impact on the status of equity generally in South Carolina.

HEARN, J., concurs.

---

**2.** It is with some irony I note that the UPL ruling announced in *Matrix Fin. Serv. Corp. v. Frazer*, 394 S.C. 134, 714 S.E.2d 532 (2011) is intended to protect borrowers from lenders. Here, viewing the facts in the light most favorable to Wachovia, it appears the lender was taken advantage of by a long-time client.